**ARTESIAN WATER COMPANY,**
Appellant,

v.

**Christopher TULOU Secretary, Delaware Department of Natural Resources and Environmental Control, Appellee.**

C.A. No. 97A–01–022–HLA.

Superior Court of Delaware,
New Castle County.

Submitted: Dec. 8, 1997.

Decided: Feb. 19, 1998.

Mary B. Graham, and Lisa B. Baeurle, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for Artesian Water Company.

Kevin P. Maloney, Deputy Attorney General, Department of Justice, Wilmington, DE, for Department of Natural Resources and Environmental Control.

William D. Bailey, and John H. Newcomer, Jr., Bayard, Handleman & Murdoch, P.A., Wilmington, DE, for United Water Delaware, Inc., Intervenor.

## MEMORANDUM OPINION

ALFORD, J.

### I. INTRODUCTION

This is the Court's decision in an appeal from an Order entered by the Department of Natural Resources and Environmental Control ("DNREC") through its Secretary, Christopher Tulou, on August 22, 1996, which denied Artesian Water Company's ("Artesian") petition to obtain a Certificate for Public Convenience and Necessity ("CPCN"). Artesian sought the CPCN so that it could provide water utility service to Grandview Farms II, a subdivision situated in southern New Castle County. DNREC denied the petition because it determined that United Water Delaware, Inc. ("United") already held a CPCN for that territory. DNREC reasoned that approval of the application would impair United's vested rights.[1] Artesian appeals from that Order.

### II. FACTUAL BACKGROUND

In May 1990, real estate developer Harrison B. Peoples ("Mr.Peoples") sought a water utility provider for the proposed development, Grandview Farms. Mr. Peoples is associated with two entities that were involved with Grandview Farms II: D.M. Peoples Investment Corporation, which owns approximately 65 acres in the development, and R.C. Peoples, the developer for the subdivision.[2] Wilmington Suburban Water Company ("WSWC"), which later became United, and Tidewater Utilities ("Tidewat-

er") each expressed an interest in providing service to the development. Despite Tidewater's opposition, WSWC obtained a CPCN from DNREC to service Grandview Farms II in 1991.

In 1993, WSWC attempted to sell its assets to Tidewater. Both entities filed a joint application with the Public Service Commission ("PSC" or "the Commission") seeking (i) approval of the sale; (ii) WSWC's abandonment of public utility water service; and (iii) approval of Tidewater's assumption of WSWC's right to provide water service to all developments below the Chesapeake and Delaware ("C & D") Canal in New Castle and Kent counties. In the Fall of 1993, WSWC informed Mr. Peoples that it was no longer interested in providing water utility service below the canal or to Grandview Farms.[3] In response, however, Mr. Peoples expressed an interest in obtaining water service from Artesian. Thereafter, Tidewater's attorneys sent Mr. Peoples a letter dated November 12, 1993 which: (1) restated that WSWC was no longer interested in providing water service below the canal; (2) informed Mr. Peoples of the proposed sales transaction; (3) urged Mr. Peoples to acknowledge the sale, transfer and assignment of WSWC's contractual rights and obligations to Tidewater: and (4) informed Mr. Peoples that it had another water company to take over the Grandview Farms II service agreement.

In response to WSWC's and Tidewater's joint application, the Commission issued an Order which, inter alia, approved the sale of WSWC assets to Tidewater pursuant to the sale agreement, and approved the abandonment of WSWC's CPCN, with conditions. On December 1, 1993, Tidewater filed for a CPCN to service Grandview Farms. In an Order issued on October 21, 1994, the Commission denied Tidewater's application because Tidewater did not have a consensual agreement with the developer, and subsequently failed to comply with the statutory

---

1. United Water Delaware, Inc. is an intervenor in this action. The Department of Natural Resources and Environmental Control waived its right to present briefing and joined in the arguments presented by United Water Delaware, Inc. in its Answering Brief.

2. Tr. CPCN Hr'g of 8/30/95 at 31.

3. Tr. CPCN Hr'g of 8/30/95 at 42.

requirements of 7 *Del.C.* § 6077.[4] From that Order, WSWC took no action. Meanwhile, Artesian had obtained landowner petitions in accordance with 7 *Del.C.* § 6077 and, on December 17, 1993, filed for a CPCN to serve the development.

In November 1994, DNREC sent a letter to WSWC stating that WSWC's obligation to provide water service to Grandview Farms II continued. DNREC asked WSWC to confirm in writing whether or not it intended to fulfill its obligations under its CPCN.[5] Two months later, WSWC sent a letter to D.M. Peoples Investment Corp. stating that it was now committed to serving that area, despite its initial decision to sell certain assets. WSWC further stated that it had every intention of providing water service to the development and "would not be giving up the CPCN for Grandview Farms II."[6]

On August 20, 1996 DNREC issued an Order which denied Artesian's request for a CPCN to serve Grandview Farms II. The Secretary concluded that the CPCN issued to WSWC (United) was still in effect and that the record did not provide adequate grounds for revoking the existing certificate for the development. On appeal, Artesian argues that WSWC lost its right to serve Grandview Farms II when it expressed its unwillingness to serve. Artesian further argues that DNREC must give effect to the Commission's Order which granted WSWC's request to abandon water utility service to the development. United argues (i) it has a vested right in the CPCN that cannot be disregarded; and (ii) WSWC did not abandon its service to Grandview Farms II. This Court heard oral arguments on December 8, 1997 pursuant to United's request.

## III. STANDARD AND SCOPE OF REVIEW

The parties stipulated to proceed on appeal directly to this Court pursuant to 7 *Del.C.* § 6008(g). The standard of review for such an appeal is governed by 7 *Del.C.* § 6008(b). Pursuant to the statute, all parties to the appeal may appear personally, or by counsel and may produce any competent evidence in their behalf. The burden of proof is upon the appellant to show that the Secretary's decision is not supported by the evidence on the record. The Court may affirm, reverse, or remand with instructions any appeal of a case decision of the Secretary.[7]

## IV. DISCUSSION

The Court's analysis must begin with the Secretary's Order which denied Artesian's application for the CPCN.[8] The Secretary concluded essentially that: (i) the CPCN issued to WSWC (United) was still in effect; and (ii) no adequate grounds existed for revoking the CPCN. The Secretary reasoned that because WSWC held a valid CPCN, subsequent issuance to Artesian to serve the same area would conflict with the policies and purposes of Subchapter V of Title 7, the statutory provisions that govern public or investor-owned water utilities. The Secretary's Order acknowledged that WSWC sought permission to abandon service to the territory. Curiously, however, it did not acknowledge the Commission's Order which approved the conditional abandonment.

The Commission's Order, *inter alia*, approved the sale of WSWC's assets to Tidewater pursuant to their Asset Sale Agreement, and stated further:

That on the condition that abandonment shall not become effective unless and until another public utility water company obtains appropriate Certificates of Public Convenience and Necessity from the Delaware Department of Natural Resources and Environmental Control to provide service, the Commission hereby approves the abandonment of service to ... Grandview

---

4. *Tidewater Utilities, Inc.'s Application 93–CPCN–10 for a Certificate of Public Convenience and Necessity for Grandview Farms II,* Sec. Order No. 94–WR–0043 of 10 21 94.

5. Letter from Farling to Walker of 11/1/94.

6. Letter from Walker to Peoples of 1 3 95.

7. 7 *Del.C.* § 6008(b).

8. Sec. Order No. 96–W–0030 of 8/20/96.

Farms II ... by Wilmington Suburban Water Corporation.[9]

Artesian argues that the language in paragraph 3 of the Commission's Order approved the abandonment and the only issue is at what point does the abandonment become effective. United, on the other hand, interprets the language as suggesting that the abandonment was not approved unless and until another public utility water company obtained a CPCN. The two views are not necessarily mutually exclusive. However, the language "hereby approves the abandonment" can not be viewed as meaningless surplusage. The Commission issued the Order in response to WSWC's desire to abandon service to the development. The Court is persuaded by the plain meaning of the language. Approval of the abandonment itself was not conditional. Rather, its effective date was conditional. Once the Commission issued its Order, WSWC had a legal obligation to serve the development so that those relying on water utility service were not adversely affected by WSWC's unilateral decision to sell its assets in that area. That concern is addressed expressly in the statute which provides for abandonment of a CPCN. In pertinent part, that subsection of the statute states "[t]he Commission shall approve any such application when it finds that the abandonment or discontinuance is reasonable, necessary and not unduly disruptive to the present or future public convenience and necessity." The Court, therefore, finds there is substantial evidence in the record to support the Secretary's conclusion that WSWC held a valid CPCN when Artesian applied for its CPCN. Despite that conclusion, the Secretary should have granted Artesian a CPCN for Grandview Farms II.

The Secretary of DNREC has the power to grant a CPCN. When a public water utility service provider meets the statutory requirements for issuance of a CPCN, pursuant to 7 *Del.C.* § 6077, the Secretary *"shall grant"* the certificate. However, the power to approve abandonment lies exclusively with the Public Service Commission. "No public utility shall abandon or discontinue, in whole or in part ... services provided under a certificate of public convenience and necessity which are subject to jurisdiction of the Commission without first having received Commission approval for such abandonment or discontinuance."[10] The Commission's power to approve abandonment is not impaired by the powers of the Secretary.[11]

■■■ Notwithstanding the Commission's power, a certificate for public convenience and necessity can not be taken from its holder without due process of law.[12] However, when the current certificate holder has expressed an unwillingness to serve, the holder acts upon the unwillingness by petitioning for abandonment, and the abandonment is approved, the Secretary does not take away a certificate holder's property right without due process of law. Under those circumstances, when another water utility provider has met the statutory requirements for obtaining a CPCN to serve the same area, the Secretary promotes the policies and purposes of Subchapter V by granting the certificate. In this matter, the Commission's Order would lack meaning if every application for a CPCN for the Grandview Farms II development were denied because the Secretary continued to acknowledge WSWC's certificate indefinitely. On the other hand, a certificate holder could not ever abandon service if the Secretary refused to respect the Commission's effective date for abandonment.

WSWC had every intention of abandoning service to Grandview Farms II at the time that Tidewater applied for a CPCN. If the statutory requirements are met, granting a certificate for public convenience and necessity is not a discretionary function.[13] Surely, had Tidewater complied with the statutory requirements for obtaining a CPCN the Secretary would have granted it. When the Commission denied Tidewater's application, WSWC remained silent for two months. As

---

9. PSC Order No. 3741 of 1/11/94.

10. 26 *Del.C.* § 203A(c)(1).

11. 7 *Del.C.* § 6078.

12. *Delmarva Power & Light Co., v. City of Seaford,* Del.Supr., 575 A.2d 1089 (1990).

13. 7 *Del.C.* § 6077.

stated in the Order, "another public utility water company" could have obtained a CPCN to serve Grandview Farms II. The language in the Commissions's Order did not create a preference for Tidewater to assume service to the development. The conditional effective date was merely an exercise of the Commission's power to assure that water service would not be disrupted. WSWC's petition to abandon service to the development was sufficient to satisfy due process requirements and its subsequent service to Grandview Farms II continued only as a legal obligation unless and until another water company obtained a CPCN. Based on the evidence presented, the Secretary had no valid reason to deny Artesian's application for the CPCN. The Secretary's decision, therefore, is not supported by the record.

The Court finds it unnecessary to address Artesian's argument that United could not repudiate its unwillingness to serve. The Order approving abandonment and the occurrence, for all intents and purposes, of the event necessary to trigger the effective date of abandonment are sufficient for this analysis.

## VI. CONCLUSION

The Court, therefore, concludes that there is substantial evidence in the record to support the Secretary's findings that Wilmington Suburban Water Corporation held an effective CPCN at the time Artesian applied for a certificate. The Court further concludes, however, in view of the mandatory language of 7 *Del.C.* § 6077 and the Commission's approval of WSWC's petition to abandon service to Grandview Farms II, the Secretary erred as a matter of law when it denied Artesian Water Company's Petition for a Certificate for Public Convenience and Necessity.

For the foregoing reasons, the decision of the Department of Natural Resources and Environmental Control is, and the same is hereby, **REVERSED.**

**IT IS SO ORDERED.**

